IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

OSCAR ROBERTO SANTOS,

DEFENDANT.

CRIMINAL NO.: RDB-13-321

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The Defendant, Oscar Roberto Santos, (the "Defendant") is charged with three counts of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2256(8); one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8); and one count of obtaining naturalized citizenship for himself contrary to law in violation of 18 U.S.C. § 1425(a). On August 23, 2013, the Defendant filed a motion (ECF No. 10) to suppress all statements from a November 8, 2012, interview conducted in the Defendant's home in Owings Mills, Maryland, incident to the execution of state search warrant on that residence. The Defendant argues that he did not validly waive his *Miranda* rights because he allegedly has only a limited understanding of English. The parties' submissions have been reviewed, and this Court held a hearing on October 8, 2013, to consider the pending motion. This Court withheld ruling at that time, and the Government and the Defendant agreed that the Court should review a recording of the interview *in camera* and then issue findings of fact and a ruling on the Motion to Suppress. For the reasons that follow, Defendant's Motion to Suppress Evidence (ECF No. 10) is DENIED.

1

FINDINGS OF FACT

Baltimore County Police Department Detective Josh Rees ("Det. Rees") testified at the hearing on October 8, 2013. In the fall of 2012, he conducted an investigation into the sharing of child pornography across a Peer to Peer ("P2P") file sharing network. On November 1, 2012, Det. Rees identified a computer sharing files containing child pornography and, through additional investigation, determined the subscriber for service to that assigned IP address was Oscar Santos at 10 Richmar Rd., Apt. B, Owings Mills, MD 21117.

With this information, Det. Rees obtained a search and seizure warrant for that address from the District Court of Maryland for Baltimore County. When Det. Rees, along with several other officers, executed the search warrant on November 8, 2012, the Defendant and his family were present in the home. Detective Rees advised the Defendant of his Constitutional rights in accordance with *Miranda v. Arizona*,[1] and the Defendant told Det. Rees that he was comfortable speaking English and that he understood his rights. Subsequently, Det. Rees and another detective took the Defendant into a bedroom in the home where they privately interviewed him regarding their suspicions about his possession, receipt, and distribution of child pornography. At the beginning of the interview, the officers again reminded the Defendant of his rights. Subsequently, in responding to the officer's questions, the Defendant made certain statements. The officers used a digital

---

[1] At the suppression hearing, Defense Counsel appeared to challenge Det. Rees' credibility regarding whether he read the Defendant his *Miranda* rights. The Defendant offered no evidence to rebut Det. Rees' testimony, and the recording of the interview included a conversation in which Det. Rees reminded the Defendant of his having advised the Defendant of his *Miranda* rights, thereby corroborating Det. Rees' later testimony about the *mirandizing* of the Defendant.

recorder to record the interview,[2] which lasted over two hours. After *in camera* review of this recording, this Court finds that the Defendant carried on a meaningful and extended conversation with the officers. In particular, the Court finds that the Defendant clearly understood and spoke English.

On August 23, 2013, the Defendant, through counsel, filed a Motion to Suppress Statements (ECF No. 10), arguing that the Defendant's statements were "not made freely and voluntarily" and that the Defendant "did not waive his rights under *Miranda v. Arizona*." Def.'s Mot. Suppress, ECF No. 10, at 2. The Government filed its response on September 13, 2013 (ECF No. 11). This Court held a hearing on the matter on October 8, 2013.

## ANALYSIS

The Defendant argues that his statements were neither freely nor voluntarily made and that he did not waive his *Miranda* rights. In particular, Defendant's counsel protested that the interview was conducted in English and that the Defendant did not validly waive his rights because the Defendant "speaks some English, but it is not his first language and he does not speak it fluently." Def.'s Mot. Suppress, at 1. Under both of Defendant's theories, the government bears the burden of showing that it acted lawfully by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 78 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."); *see also, e.g.*, *Colorado v. Connelly*, 479 U.S. 157, 168 69 (1986) (preponderance of the evidence burden regarding waiver of Miranda rights); *Lego v. Twomey*,

---

[2] This recording was submitted into evidence as Government Exhibit 1.

3

404 U.S. 477, 489 (1972) (preponderance of the evidence burden regarding voluntariness of confession).

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. The privilege against self-incrimination applies to the states through the Fourteenth Amendment. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). In order to protect these rights, a suspect must be provided specific warnings concerning his rights when the suspect is interrogated while in custody. *Miranda v. Arizona*, 384 U.S. 436 (1966).

A Defendant may, however, waive the protections afforded by *Miranda*. In order to prove that a defendant validly waived those rights, the Government must show that, in the totality of the circumstances, the defendant voluntarily relinquished the rights and that the defendant was fully aware of not only the waiver but the consequences of that waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also Miranda*, 384 U.S. at 44 (holding waiver must be made "voluntarily, knowingly, and intelligently"). The "background, experience, and conduct" of the defendant are particularly relevant in this inquiry. *U.S. v. Young*, 529 F.2d 193, 195 (4th Cir. 1975) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Here, however, both parties agree that the interview occurred while the Defendant was in custody. Thus, the main issues are whether his statements were freely and voluntarily given and whether the Defendant understood the waiver of his *Miranda* rights.

I.   **The Defendant's Statements Were Voluntarily Made.**

Under the Fifth Amendment, "[a] statement is involuntary . . . only if it is 'involuntary' within the meaning of the Due Process Clause"—i.e., it is "extracted by . . .

4

threats or violence"; or "obtained by . . . direct or implied promises"; or "the exertion of . . . improper influence." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc). Thus, the most important inquiry is whether the defendant's will has been "overborne" or his "capacity for self-determination critically impaired." *United States v. Pelton*, 835 F.2d 1067, 1071-72 (4th Cir. 1987). No such improper influence exists in this case. The recording does not indicate that any threats were made to the Defendant.[3] In addition, the Defendant eventually terminated the interview, indicating he had voluntarily engaged in the interview with the detectives.

## II. The Defendant's Wavier of His *Miranda* Rights Was Knowing and Intelligent.

The Defendant also argues that, due to his allegedly limited English-speaking abilities, there was no valid waiver of his *Miranda* rights. In the context of second-language English speakers, the relevant factors to determine the validity of a *Miranda* waiver include:

> (i) whether the defendant indicated in the affirmative when asked if he understood his rights; (ii) whether the defendant indicated he understood English; (iii) the length of defendant's residency within the United States; and (iv) defendant's previous encounters with the criminal justice system.

*U.S. v. Moreno*, 122 F. Supp. 2d 679, 681 (E.D. Va. 2000). Thus, a defendant's limited language abilities are not necessarily grounds for suppressing a statement:

> Limited ability to understand English *may* render a waiver of rights defective. *See, e.g.*, *United States v. Short,* 790 F.2d 464, 469 (6th Cir.1986). *However, such a circumstance does not necessarily thwart an effective waiver. See Campaneria v. Reid,* 891 F.2d 1014, 1020 (2d

---

[3] At the suppression hearing, Defense Counsel questioned whether some of the detectives' actions (specifically, the detectives' attempts to make the Defendant translate some of his internet search terms) may have exerted some undue influence such that the Defendants' statements were not voluntary. However, Defense Counsel retreated from his original suggestion that the detectives' conduct was threatening. Moreover, after reviewing the recording (which included the particular exchange identified by Defense Counsel), the Court finds no coercion.

5

> Cir.1989), *cert. denied,* 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991) (holding that defendant whose native tongue was Spanish was able to waive *Miranda* rights where he said he understood rights read to him though he spoke in broken English and lapsed into Spanish occasionally during interview).

*United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997) (emphasis added).

In this case, the Court's factual finding that the Defendant understands English resolves this issue. Specifically, after reviewing the recording of the interview *in camera*, the Court notes that the Defendant was responsive to the detectives' questions and was able to provide meaningful answers. Nevertheless, the evidence at the suppression hearing also supports a finding of a knowing and intelligent waiver. As Detective Rees testified, the Defendant told the detectives that he could understand English and that he understood his rights after being *mirandized*. Moreover, the Defendant stated that he was naturalized citizen and had lived in the country for 20 years. Finally, after the thrust of the detectives' questions changed, Det. Rees testified that the Defendant opted to end the interview, indicating that he understood his right to remain silent. In light of these facts,[4] this Court finds that the Defendant made a valid waiver of his *Miranda* rights.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress Evidence (ECF No. 10) is DENIED.

---

[4] At the suppression hearing, Detective Rees also testified that the Defendant was implicated in a 2003 child exploitation investigation and was interviewed by another detective at that earlier time. Accordingly, the Government argues that the Defendant's past familiarity with the criminal justice system also supports a finding of valid waiver. Defense Counsel challenged this reasoning, arguing that no specific facts about the circumstances of that earlier interview were offered. As this Court finds that the other factors strongly favor a finding of valid waiver, the Court need not address this issue.

A separate order follows.

Dated: October 11, 2013

/s/_____
Richard D. Bennett
United States District Judge